# In the United States Court of Federal Claims

No. 11-733C
(Filed: August 22, 2013)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THOMAS F. NEENAN, as Trustee of
the Thomas F. Neenan, Sr. Revocable
Trust,

                *Plaintiff*,           Contracts; offer versus invitation
                                        for an offer; contracting authority.

v.

THE UNITED STATES,

                *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    *Wallace L. Taylor*, Cedar Rapids, IA, for plaintiff.

    *Barbara E. Thomas*, United States Department of Justice, Civil
Division, Washington, DC, with whom were *Steven J. Gillingham*, Assistant
Director, *Jeanne E. Davidson*, Director, and *Stuart F. Delery*, Assistant
Attorney General, for defendant.

_____

## OPINION

_____

BRUGGINK, *Judge*.

    This is an action for breach of contract.  Plaintiff, Thomas F. Neenan,
brings this suit as Trustee of the Thomas F. Neenan, Sr. Revocable Trust.  He
alleges that the United States ("defendant") breached an agreement to lease
plaintiff's office building from May 2011 to May 2016.  Defendant has filed
a motion for summary judgment, contending that it did not contract with

1

plaintiff. The motion is fully briefed, and we held oral argument on July 17, 2013. For the reasons set out below, we grant defendant's motion.

BACKGROUND[1]

At an unspecified date in the 1970s, Thomas Neenan and his wife built an office in Arlington, Iowa and began leasing it to the U.S. Postal Service. Neither party submitted facts regarding the terms of leases prior to 2000. The most recent lease expired on April 30, 2011. According to plaintiff, he entered a new lease with the Service commencing on May 1, 2011, at the expiration of the five-year renewal of the prior lease. Both parties submitted facts regarding the negotiations leading to that prior lease.

Those negotiations began in January 2000. The Service sent plaintiff a draft of an unsigned agreement to lease the property from May 2001 to April 2006. The signature page of the draft had the heading "All Individual Offerors Must Sign." Def. App. 3. Below were signature lines for both Mr. and Mrs. Neenan. At the bottom of the page was a space headed by the phrase, "Acceptance by the Postal Service." *Id.* A signature line underneath was prepared for the Contracting Officer, Dick Heins. Other portions of the lease stated the rights and obligations of the Neenans. One section, entitled "Representations and Certifications," referred to the Neenans as the offerors. *See* Def. App. 13-15.

After Mr. Neenan received the draft lease, he made several changes. While the original draft provided for rental payments of $12,000 per year and included a government right to termination, Mr. Neenan increased the rental rate from "$12,000" to "12,600" by changing the first zero to a six, lined

_____

[1] The facts are drawn from Plaintiff's Statement of Material Facts, Plaintiff's Appendix ("Pl. App."), Defendant's Proposed Findings of Uncontroverted Fact, and the Appendix to Defendant's Motion for Summary Judgment ("Def. App."). Rule 56 of the Rules of the Court of Federal Claims ("RCFC") allows a party to dispute a factual assertion from another party by citing to particular parts of the record or by showing that the other party fails to support the assertion with admissible evidence. RCFC 56(c)(1)(A)-(B). Some of the assertions offered by both parties here were not challenged by the other side. We "consider the fact undisputed," RCFC 56(e)(2), when a party "fails to properly address another party's assertion of fact as required by RCFC 56(c)." RCFC 56(e).

through the termination clause, wrote "NONE" beside it, and initialed next to his changes. *See* Def. App. 2; Pl. App. 3. He and his wife signed the marked-up draft and sent it back to the Postal Service.

Contracting Offer Heins initialed beside the changes made by Mr. Neenan and signed the lease on January 27, 2000. According to an affidavit executed by Mr. Neenan, Mr. Heins told him that "the signature line on the lease for the Postal Service was to verify that changes that may have been made to the lease were made with the approval of the Postal Service." Pl. App. 18-19.

The lease expired in five years with an option for renewal. Contracting Officer Garry Matox signed that option on September 29, 2005. This extended the lease until April 30, 2011. At an unspecified date during that extension, plaintiff's wife passed away, and he transferred ownership of the Neenan property to the Thomas F. Neenan, Sr. Revocable Trust.

A month before the expiration of the extension, the Postal Service contacted plaintiff through Real Estate Contract Specialist Nancy L. Calderon. As a contract specialist, Ms. Calderon communicated with landlords regarding the contract terms in a lease. At her deposition, however, she stated, "I cannot make decisions on my own. I do not have unilateral decision making [sic]." Def. App. 47. Ms. Calderon also stated that she would obtain the signatures of "the district manager, the district finance manager, [and] the postal manager," before mailing out the terms of a lease. *Id.* At his deposition, plaintiff was asked whether he understood that Ms. Calderon "didn't have the authority to approve or change terms." Def. App. 66. He replied, "[t]hat's right." *Id.*

Ms. Calderon mailed an unsigned lease agreement and cover letter addressed to Mr. and Mrs. Neenan on March 14, 2011. Ms. Calderon did not know that Mrs. Neenan had passed away or that plaintiff had transferred ownership of the Neenan property to the Thomas F. Neenan, Sr. Revocable Trust. In the letter, Ms. Calderon recited that, "enclosed are copies of a new Lease agreement for your review." Def. App. 18. Although she noted that budget deficits required the Service to reduce rental payments throughout the country, Ms. Calderon "determined that [the] rental rate will increase slightly" for the Neenan property. *Id.* She told the Neenans that, "should the Lease document meet with your approval, please sign, witness and date, where indicated and return to my attention." *Id.* She also noted that "[a]ll owners of record are advised to read the Lease thoroughly to ensure that each party is in

agreement with the terms and conditions of this contract." *Id.* The letter requested a response within 10 days.

The draft lease provided for a five-year, fixed-term lease, ending in April 2016, with an annual rent of $13,256, and a right for termination by the government. Mr. and Mrs. Neenan were the "Landlord." Def. App. 31. The draft provided signature lines for the Neenans under the heading, "Individual, Administrator, or Trustee." Def. App. 33. Also below that heading, the "Landlord" was informed that he or she had to demonstrate leasing authority. If the landlord had a spouse, both persons had to execute the lease and submit "adequate evidence of title." *Id.* If the landlord was a trustee, he or she had to provide "a certified copy of the instrument creating the trust." *Id.* At the bottom of the page was a second heading, "Acceptance by the Postal Service," with a signature line for the Contracting Officer, Candace Kinne. *Id.*

Ms. Kinne testified that she had been a contracting officer since 2006. When asked what a contracting officer does, Ms. Kinne replied that she "[s]igns contracts, signs leases, all kinds of real estate documents." Def. App. 52. According to Ms. Kinne, she was not directly involved in negotiating the terms of the lease, and those duties belonged to Ms. Calderon. *Id.* Ms. Calderon also testified regarding Ms. Kinne's duties. She stated that Ms. Kinne makes sure "I present documents to her in the correct manner as specified by Sarbanes-Oxley, that I have all the correct date and information attached to said document before she will sign it." Def. App. 49. At his deposition, plaintiff was asked whether he understood that Ms. Kinne was "in charge of signing off on the lease." Def. App. 69. Plaintiff replied that he did. *Id.* He did state, however, that he believed her signature was necessary to form a contract only if he made changes to the draft. *Id.*

After plaintiff received the draft lease, he sent a letter to Ms. Calderon on April 9, 2011. He stated, "I will accept the agreement as written," Pl. App. 12, but he objected to the termination clause and also noted that the Thomas F. Neenan Revocable Trust was the current owner of the building. The letter did not state that Mrs. Neenan had passed away.

A few days later, plaintiff spoke with someone at the Postal Service. At his deposition, plaintiff noted that he was not sure who that person was, Pl. App. 4, although he stated in an interrogatory that he believes it was Ms. Calderon. Pl. App. 14. According to his interrogatory, Mr. Neenan told that person that his wife had passed away. *Id.* Plaintiff was told that the termination clause was not negotiable. *See* Pl. App. 4. Plaintiff sent a follow-

up letter to Ms. Calderon on April 15, 2011.  He told Ms. Calderon that he believed his proposed changes were proper, but acknowledged that "apparently your authorities do not concur."  Pl. App. 13.

Soon thereafter, plaintiff spoke on the telephone with Ms. Calderon. At his deposition, plaintiff stated that he told Ms. Calderon he would sign the lease with only the change in ownership indicated.  Plaintiff testified that Ms. Calderon's response was, "'[i]f that's the only change, then it's a deal.'"  Pl. App. 5.[2]

Before plaintiff sent the draft to the Service, he made changes.[3]  He crossed out his wife's name in each place where the draft lease indicated her as a landlord, edited the rental payment address to refer to the trust, and changed the signature page to refer to the trust.  Mr. Neenan also signed the last page on behalf of the trust.

Plaintiff faxed the marked-up lease to Ms. Calderon on or about April 20, 2011.  Contracting Officer Kinne, however, did not sign it.  Soon after the termination of the prior lease on April 30, 2011, the Postal Service vacated the building.

In his complaint filed November 3, 2011, plaintiff contends that the Postal Service was obligated to extend the lease until 2016.  A contract was formed, plaintiff asserts, when he signed the draft lease sent by the Service. Defendant moves for summary judgment under RCFC 56.  Defendant contends that plaintiff did not enter into a new contract with the Service because the Service never made an offer to plaintiff.

## DISCUSSION

Defendant's motion challenges plaintiff's proof of the elements of a contract with the government: (1) mutuality of intent to contract; (2) lack of

---

[2] As defendant points out, Mr. Neenan immediately qualified this statement: "'[i]t's no problem' is the way she put it.  And then she told me to fax the lease, and when I did that, I assumed it was a done deal."  Pl. App. 5.

[3] For purposes of this motion, defendant stipulates that the lease attached to its appendix of facts is the lease plaintiff faxed to the Postal Service.  Defendant otherwise reserves its right to dispute that fact.

ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract. *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003). According to defendant, plaintiff fails to establish facts showing that defendant made an offer which plaintiff could accept merely by signing the draft lease. We agree with defendant.

An offer does not exist unless the offeror manifests an intent to be bound. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001) (stating that a valid offer was not made because the alleged offeror did not manifest an intent to be bound); *see also* Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). The existence of detailed terms, such as in the draft lease here, does not show that intent in every case. *See* Restatement (Second) of Contracts § 26 cmt. d ("Even though terms are specified in detail, it is common for one party to request the other to make an offer."). A document may show the "willingness to enter a bargain" but it "is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." *Id.* § 26.

According to defendant, the most obvious indicator that the government was withholding consent until a later time appears on the signature page of the draft. The signature line for the contracting officer, below the heading, "Acceptance by the Postal Service," was not executed when Ms. Calderon mailed the draft to plaintiff. The only logical inference, defendant contends, is that acceptance would come later – that plaintiff's executed response would amount to an offer to defendant.

Defendant also points to the requirement set out in the draft that plaintiff had to provide evidence of authority to lease, a particularly relevant requirement when the nominal ownership had changed. Such a requirement suggests that the contracting officer reserved the right to review proof of contracting authority. The government further relies on the negotiations between plaintiff and the Postal Service in 2000. That agreement was not consummated until after the government first sent an unsigned lease; plaintiff made changes, signed the lease, and sent it to the government; the contracting officer approved the changes with initials and then signed the lease. We agree with defendant that the absence of a signature and the requirement of proof of

contracting authority are strong indicators that the lease could not be finalized merely by plaintiff's signature.

Plaintiff attempts to limit the effect of the absence of a signature by offering the statement by Contracting Officer Heins in 2000,[4] that "the reason for the signature line on the [2000 draft] lease for the Postal Service was to verify that changes that may have been made to the lease were made with the approval of the Postal Service." Pl. App. 18-19. Plaintiff construes this statement to mean that Mr. Heins viewed the unsigned draft as an offer.

We view that construction as going beyond the literal meaning of his statement. Mr. Heins did not affirmatively state that no signature was necessary if the landlord made no changes. Indeed, such a construction does not explain at what point anyone with contracting authority for the government would have signed the agreement. *Cf. Anderson*, 344 F.3d at 1353 (stating that, to be valid, an agreement with the government must be entered by someone with contracting authority). Plaintiff's construction of the facts also directly conflicts with the language of the 2000 draft, which refers to the Neenans as "offerors." The events in 2000 are thus fully consistent with defendant's position, namely, that the Postal Service forwarded an unsigned draft to the Neenans, the Neenans made changes to the lease, and the contracting officer only signed the modified agreement.

And even if Mr. Heins meant what plaintiff infers, his was the statement of a different contracting officer as to negotiations with respect to a different lease. That Mr. Heins made an ambiguous statement ten years earlier about his intent regarding a different lease does not constitute a pattern or practice sufficient to bind his successor at a later time. In any event, even if the statement bound Mr. Heins' successor, plaintiff made changes to the draft in 2011 which, according to the Heins statement, needed "approval of the Postal Service." Pl. App. 18-19.

Plaintiff contends, however, that representations made by Real Estate Contract Specialist Nancy Calderon vitiate these signature problems. According to plaintiff, Ms. Calderon's signed letter forwarding the draft agreement showed the government's intent to be bound, and that her signature,

---

[4] Plaintiff does not give a specific date for this statement, but we assume it occurred in 2000 in connection with the draft agreement, when Mr. Heins served as contracting officer.

not on the lease but on the cover letter, constituted assent by the government. Although plaintiff acknowledges that he made changes to the draft by substituting the trust, he contends that Ms. Calderon approved those changes over the telephone when she stated "it's a deal."

Plaintiff acknowledges the difficulty of this approach. Ms. Calderon did not have express authority to contract with plaintiff. She was not the contracting officer. But plaintiff contends that Ms. Calderon was clothed with implied authority to execute the lease. We defer for a moment the question of whether Ms. Calderon had authority to bind the government. We will assume that she did and will consider only the question of whether there was a binding offer by the government.

Ms. Calderon's cover letter is plainly not, in itself, an offer. It merely forwarded the draft agreement. And we cannot ignore the fact that the enclosed draft lease was not signed and that the wording of the draft was inconsistent with an unconditional offer. The draft clearly reserved to the Postal Service the right to review plaintiff's evidence of contracting authority. The trust agreement that plaintiff attached to the marked-up lease is that contracting authority. Only after the contracting officer's final review of the lease and proof of authority, followed by a signature, would there be final approval.

Nor is the secondary evidence offered by plaintiff sufficient to overcome these deficiencies. Ms. Calderon's telephone statement that "it's a deal," aside from its obvious authority problem, is consistent with defendant's position that the Postal Service was waiting to see an offer, in writing, from plaintiff. An intent later to adopt a written agreement will not prevent an oral contract, "but the circumstances may show that the agreements are preliminary negotiations." Restatement (Second) of Contracts § 27 (1981). Ms. Calderon's alleged statement does not eliminate the need for a signature by the contracting officer or the requirement for the landlord to demonstrate authority to lease.

An independent difficulty arises with plaintiff's position. Because plaintiff relies on Ms. Calderon's signed cover letter and her statement, "it's a deal," plaintiff must show that Ms. Calderon had actual contractual authority to bind the government. *See Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007) ("Where a party contracts with the government, apparent authority is not sufficient; an agent must have actual authority to bind the government."). Plaintiff concedes that Ms. Calderon lacked express

authority, but suggests that actual authority may be implied.  *See, e.g.*, *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989); John Cibinic, Jr., Ralph C. Nash, Jr., & Christopher R. Yukins, *Formation of Government Contracts* 96-97 (4th ed. 2011).[5]  A person has implied actual authority if that authority is "an integral part of the duties assigned." Cibinic, et al., 96 (citing *Landau*).  "Contracting authority is 'integral' when an employee cannot perform [her] duties without it, and the authority is an essential or necessary part of the employee's occupation."  *Biofunction, LLC v. United States*, 92 Fed. Cl. 167, 172 (2010) (citing *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007)).

As defendant correctly notes, Ms. Calderon's duties involved negotiating the terms of each lease, securing the signature of the landlord, and forwarding the document to the contracting officer.  She stated that she could not make decisions on her own and that she received approval from her superiors before sending out the draft lease.  Plaintiff acknowledged this lack of independent authority.  In his April 15, 2011 letter to Ms. Calderon, he said he felt his changes to the draft lease were reasonable but acknowledged that "apparently your authorities do not concur." Pl. App. 13.  At his deposition, plaintiff also admitted that, to his understanding, Ms. Calderon did not have authority to change the terms of the draft lease.  Ms. Calderon's duties were therefore only ministerial.  Contracting authority was not necessary for Ms. Calderon to exercise her duties.  *See H. Landau & Co. v. United States*, 20 Cl. Ct. 400, 407 (1990) (holding that a person did not have contracting authority when "[h]is only contract-specific duties were purely ministerial"); *cf. Stevens Van Lines, Inc. v. United States*, 80 Fed. Cl. 276, 280-81 (2008) (holding that two high-ranking employees with managerial duties had implied authority).

We conclude that none of the plaintiff's offered evidence, even if fully credited, is sufficient to show an unambiguous offer by the Postal Service to

---

[5] Although apparent authority does not bind the government, *Landau*, 886 F.2d at 324, plaintiff asserts that "if the employee appears to have authority and there is nothing in the law or regulations that would put a third party on notice of the employee's lack of authority, the employee can bind the agency to a contract."  Resistance to Def.'s Mot. for Summ. J. 9.  Plaintiff contends that we supported that proposition in *Brunner v. United States*, 70 Fed. Cl. 623 (2006).  *Brunner* does not, however, support that contention. *See id.* at 627-41 (discussing the history of apparent authority and why it does not apply to government contracts).

be bound upon plaintiff's signing of the draft lease.[6]  Accordingly, we grant the government's motion for summary judgment.  The Clerk is directed to enter judgment for defendant and dismiss the case with prejudice.

/s/Eric G. Bruggink
Eric G. Bruggink
Judge

---

[6] Defendant also argued that plaintiff failed to properly accept the agreement. We deem analysis of that issue to be unnecessary.